# 21-102

## United States Court of Appeals
## for the Second Circuit



SEKOUBA SAMAKE,

*Plaintiff-Appellant,*

v.

THUNDER LUBE INC., ABKO
ASSOCIATES INC., and DROR HERSHOWITZ,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFF-APPELLANT

---

ABDUL HASSAN LAW GROUP, PLLC
*Attorney for Plaintiff-Appellant*
215-28 Hillside Avenue
Queens Village, New York 11427
(718) 740-1000
*abdul@abdulhassan.com*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

I.   JURISDICTIONAL STATEMENT .................................................1

II.  ISSUES PRESENTED .....................................................................2

III. STATEMENT OF FACTS/STATEMENT OF CASE ......................................3

IV. SUMMARY OF ARGUMENTS.......................................................8

V.  ARGUMENTS ...............................................................................10

  1.  THE FILING OF THE NOTICE OF DISMISSAL ON JUNE 17, 2019, PURSUANT TO FRCP 41(a)(1)(A)(i), TERMINATED THIS ACTION AND DIVESTED THE DISTRICT COURT OF JURISDICTION .............................10

   (A)  FLSA/NYLL SETTLEMENTS AND DISMISSALS WITHOUT PREJUDICE DO NOT REQUIRE COURT APPROVAL – BUT IN ANY EVENT, THERE WAS NO SETTLEMENT IN THIS CASE .........................12

   (B)  PLAINTIFF DID NOT AND COULD NOT WITHDRAW OR VACATE THE NOTICE OF DISMISSAL .......................................................14

   (C)  IN LIGHT OF THE SECOND CIRCUIT'S DECISION IN *ISC HOLDING*, THE FAA DID NOT NEGATE THE EFFECT OF THE RULE 41 NOTICE OF DISMISSAL BECAUSE DEFENDANTS IN THIS CASE HAD THE OPPORTUNITY TO SERVE AN ANSWER AND/OR MOTION FOR SUMMARY JUDGMENT BUT DID NOT.......................................................18

2.   IN ADDITION, THE FAA DID NOT NEGATE THE EFFECT OF THE RULE 41 NOTICE BECAUSE THE REQUIREMENTS TO COMPEL ARBITRATION UNDER THE FAA WERE NOT MET ...................................22

(A)   THE PURPORTED ARBITRATION AGREEMENT CONTAINS ILLEGAL PROVISIONS WHICH RENDER IT INVALID AND UNENFOCEABLE UNDER THE FLSA AND FAA ......................................24

(B)   THE AMBIGUITIES RECOGNIZED BY THE DISTRICT COURT ITSELF RENDERS THE PURPORTED ARBITRATION AGREEMENT UNENFORCEABLE UNDER THE FAA – ESPECIALLY AT THE MOTION STAGE AND BEFORE A TRIAL – AT MINIMUM, A TRIAL IS REQUIRED AS PROVIDED FOR BY THE FAA AT 9 USC 4 .....................29

3.   DISMISSAL AS OF RIGHT PURSUANT TO FRCP    RULE 41(A)(1)(A)(i) WAS TAILOR MADE FOR SITUATIONS LIKE THE ONE WE HAVE HERE .......................................................................................................36

VI. CONCLUSION.................................................................................................39

# TABLE OF AUTHORITIES

## Cases

*67 Wall St. Co. v. Franklin Natl. Bank*,
  37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184 .....................................31

*A.B. Dick Co. v. Marr*,
  197 F.2d 498, 501 (2d Cir. 1952) ............................................................... passim

*Ali v. Charter Communications Holding Company, LLC et al*,
  EDNY Case No. 19-CV-07268 (RRM)(RER) .....................................................37

*Am. Exp. Co. v. Italian Colors Rest.*,
  570 U.S. 228, 235 (2013)........................................................................ 22, 28, 29

*Am. Fire & Casualty Co. v. Finn*,
  341 U.S. 6, 18 n. 17 (1951)...............................................................................17

*Baby v. Nissan Enterprises, Inc. et al*,
  Case No. 17-cv-03209 (Judge Amon – June 26, 2017)........................................13

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728, 740 (1981)..................................................................................23

*Brady v. Williams Capital Grp., L.P.*,
  14 N.Y.3d 459, 465, 928 N.E.2d 383, 386 (2010) ..............................................34

*Caserta v. Home Lines Agency, Inc.*,
  273 F.2d 943, 946 (2d Cir. 1959) .....................................................................26

*Cheeks v. Freeport Pancake House, Inc. et al*,
  Case No. 12-cv-04199, ECF Nos. 29, 28, (Judge Seybert) .................................13

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) .................................................................... passim

*D.A. Schulte, Inc. v. Gangi,*
  328 U.S. 108, 66 (1946)......................................................................................23

*Espinosa v. SNAP Logistics Corp.,*
  No. 17 CIV. 6383 (AT), 2018 WL 9563311, at 5 (S.D.N.Y. Apr. 3, 2018) ........22

*Gomez v. Winn Management Group LLC,*
  Case No. 18-CV-8559, ECF No. 21 (SDNY, 2019)............................................37

*Hamilton v. Shearson-Lehman Am. Exp., Inc.,*
  813 F.2d 1532, 1534 (9th Cir. 1987) ........................................................... 11, 20

*Hester Indus., Inc. v. Tyson Foods, Inc.,*
  160 F.3d 911, 916 (2d Cir.1998) ............................................................. 8, 11, 20

*Hierro v. Caticho Inc. et al,*
  Case No. 17-CV-05698, ECF No. 16-18 (Judge Nathan – October 4, 2017) ......13

*Hill v. W. Bruns & Co.,*
  498 F.2d 565, 567 n. 2 (2d Cir.1974) ..................................................... 11, 19, 20

*In re Stable Mews Assocs.,*
  778 F.2d 121, 125 (2d Cir.1985) .......................................................................17

*ISC Holding AG v. Nobel Biocare Fin. AG,*
  688 F.3d 98, 107 (2d Cir. 2012) ................................................................. passim

*ISC Holding AG v. Nobel Biocare Investments N.V.,*
  351 F. App'x 480 (2d Cir. 2009).........................................................................31

*Jimenez v. LGL2 Bronx Portfolio LLC,*
  No. 15-CV-9331 (S.D.N.Y. Oct.7, 2016)............................................................13

*Martinez v. Gulluoglu LLC*,
No. 15 CIV. 2727 (PAE), 2016 WL 206474, at 3 (S.D.N.Y. Jan. 15, 2016) ....... 13

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
723 F.3d 192, 198 (2d Cir. 2013) ........................................................... 25

*New Prime Inc. v. Oliveira*,
139 S. Ct. 532, 537–38, 202 L. Ed. 2d 536 (2019) ................................ 24

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220, 229 (2d Cir. 2016) ........................................................... 30

*Revson v. Cinque & Cinque, P.C.*,
221 F.3d 59, 68 (2d Cir. 2000) ............................................................... 31

*Santiago v. Victim Serv. Agency of the Metro. Assistance Corp.*,
753 F. 2d 219, 221 (2d Cir.1985) .................................................. 11, 19

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*,
7 F.3d 1091, 1094 (2d Cir. 1993) ........................................................... 31

*Thorp v. Scarne,* 599 F.2d 1169, 1176 (2d Cir.1979) .................................... passim

*Toure v. Thunder Lube Inc.,*
No. 17CV0657DLIJO, 2019 WL 4805197 at 5 (E.D.N.Y. Sept. 30, 2019) ........ 28

*Wight v. BankAmerica Corp.*,
219 F.3d 79, 90 (2d Cir.2000) ............................................................... 18

*Yong Qin Luo v. Mikel,*
625 F.3d 772, 775 (2d Cir.2010) .................................................. 17, 18

**Statutes**

28 U.S.C. § 1291, 1292................................................................1

28 U.S.C. § 1367................................................................1

28 U.S.C. § 1331................................................................1

28 U.S.C. § 1337................................................................1

29 U.S.C. § 201 et Seq.................................................................1

9 U.S.C. § 3 .......................................................... 18, 19

9 U.S.C. § 4 .......................................................... 22, 29, 31

NYLL § 663 ............................................................ 23, 27, 28

**Rules**

Fed.R.Civ.P. 41(a)(1)(A)(i) ............................................................ passim

# I. JURISDICTIONAL STATEMENT

Plaintiff-Appellant Sekouba Samake ("Plaintiff," "Appellant" or "Samake") filed this action in the United States District Court – Eastern District of New York, on February 24, 2019, against Defendants-Appellees Thunder Lube Inc., Abko Associates Inc. and Dror Hershowitz (collectively "Defendants," or "Appellees"). The district court had subject matter jurisdiction over Plaintiff's FLSA claims under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et Seq., and pursuant to 28 U.S.C. §§ 1331, 1337, and supplemental jurisdiction over Plaintiff's state law claims, including under 28 U.S.C. § 1367.

Plaintiff timely filed his notice of appeal (A85-A86)[1] on January 17, 2021 from the order of the Hon. Eric N. Vitaliano, vacating the notice of dismissal and compelling arbitration (A74-A84), entered in favor of Defendants, in the United States District Court, Eastern District of New York, on December 22, 2020.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291, 1292. See *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012)("An order vacating a notice of dismissal filed under Fed.R.Civ.P. 41(a)(1)(A)(i) is immediately appealable. *Thorp v. Scarne*, 599 F.2d 1169, 1171–72 & n. 2 (2d Cir.1979).").

---

[1] "A" in this and other citations used in this brief refers to the joint appendix. For example, "A39" refers to page 39 of the joint appendix.

## II.    ISSUES PRESENTED

*Issue 1:* Whether the notice of voluntary dismissal filed by Plaintiff pursuant to FRCP 41(a)(1)(A)(i), on June 17, 2019 (A23), terminated this case and divested the district court of jurisdiction - where, as here, no answer or motion for summary judgment was filed?

Answer: Yes. The Second Circuit held in *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 107 (2d Cir. 2012), that the FAA and a motion to compel arbitration does not negate or vacate a Rule 41(a)(1)(A)(i) notice of dismissal, where, as here, the Defendants had an opportunity to file an answer and/or a motion for summary judgment but did not make any such filing. See also, *Thorp v. Scarne,* 599 F.2d 1169, 1176 (2d Cir.1979) ("In contrast to other methods of dismissal contemplated by Rule 41, voluntary dismissal prior to answer or a motion for summary judgment is effective in the absence of any action by the court."); *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501 (2d Cir. 1952) ("voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought, thus vitiating and annulling all prior proceedings and orders in the case, and terminating jurisdiction over it for the reason that the case has become moot.").

### III.  STATEMENT OF FACTS/STATEMENT OF CASE

On February 24, 2019, Plaintiff Sekouba Samake ("Plaintiff" or "Samake"), filed this case in the district court asserting wage claims against Defendants, including overtime claims under the FLSA and NYLL. (A5-A13).

On May 16, 2019, Defendants served a motion to compel arbitration. On June 17, 2019, Plaintiff filed a notice of dismissal *without* prejudice pursuant to FRCP Rule 41(a)(1)(A)(i) – before an answer or summary judgment motion was served. (A23).

Although a plaintiff does not have to explain his reasons for dismissing an action as of right pursuant to FRCP Rule 41(a)(1)(A)(i), there were several compelling reasons for dismissing this action without prejudice. (See i.e. A24-A25). First, Plaintiff was not aware of the purported arbitration agreement and is still not convinced he signed or entered into the purported arbitration agreement. The first time Plaintiff's counsel became aware of the purported arbitration agreement was after the case was filed when the defense put forth a copy. In fact, the purported arbitration agreement contains an unlawful confidentiality clause prohibiting disclosures of the agreement without exception under penalty of dismissal/waiver of Plaintiff's claims. (A18 ¶ 7).

Second, and in any event, the purported arbitration agreement made it virtually impossible to arbitrate the claims because if the purported arbitration

agreement is applied as written, it will result in the destruction/waiver of Plaintiff's claims – a destruction or waiver which also violates the effective vindication doctrine under the Federal Arbitration Act ("FAA"), and the prohibition on waiver of wages and rights under the Federal Fair Labor Standards Act ("FLSA"). For example, the purported arbitration agreement: 1) waives overtime wages by shortening the statute of limitations and imposing pre-claim procedures not required or permitted by the FLSA and NYLL (A17 ¶ 1); 2) waives liquidated damages and penalties (A18 ¶ 3); and 3) waives Plaintiff's costs/fee rights under the FLSA and NYLL (A18 ¶ 4), etc.

Moreover, the purported agreement appears to require Plaintiff to pay the fees of Defendants if he challenged the purported arbitration agreement and lost (A18 ¶ 6, 7) – an extremely abusive provision that conflicts with he FLSA and its remedial purpose and its status as a "uniquely protective statute" as this Court found in *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015), based on U.S. Supreme Court precedents. Something is drastically wrong, where, as here, an employee protected by the FLSA, is forced to accept waiver of FLSA wages and rights that this Court and the Supreme Court have found to be invalid, or challenge the illegal waiver and risk paying potentially tens of thousands in legal fees to the employer.

Third, the language and face of the purported arbitration agreement provide for the filing of an "administrative" complaint – with agencies such as the federal and state departments of labor (A17 ¶ 1). In any event, the independent statutory right of those agencies to investigate and handle wage claims is not and cannot be impaired by a purported arbitration agreement. Those agencies also have more authority, expertise and tools to investigate and handle claims in certain situations and on behalf of a broader group of employees.

Simply put, given the waiver of rights mandated by the purported arbitration agreement as well as the immense risk of having to pay the costs of the arbitrator as well as the legal fees of the Defendants if Plaintiff lost a challenge to the motion or lost in arbitration – fees which can amount to tens and even hundreds of thousands of dollars, Plaintiff simply could not and cannot take the risk of going to arbitration under the purported arbitration agreement in this case. As such, this case is tailor made for a notice of dismissal as of right pursuant to FRCP Rule 41(a)(1)(A)(i).

In response to the notice of voluntary dismissal filed by Plaintiff on June 17, 2019, the district court on June 18, 2019 issued the following order (A3):

> ORDER re 13 Letter filed by Sekouba Samake, 12 Notice of Voluntary Dismissal filed by Sekouba Samake. Plaintiff has filed a notice of voluntary dismissal without prejudice and implies that no settlement has been reached, but has not expressly informed the Court whether a settlement has been reached. Plaintiff is directed to file a further letter on ECF, by June 24, 2019, stating whether the parties

have reached a settlement, and, if so, whether they intend to file a motion for settlement approval. See Gallardo v. PS Chicken Inc., 285 F. Supp. 3d 549 (E.D.N.Y. 2018) (conducting Cheeks review where parties filed stipulation of dismissal without prejudice in apparent effort to evade judicial review); Carson v. Team Brown Consulting, Inc., No. 16-CV-4206 (LDH) (RLM), 2017 WL 4357393, at *3 (E.D.N.Y. Sept. 29, 2017) (discussing "potential preclusive effect of a dismissal without prejudice" in light of overbroad release provisions and the applicable statute of limitations). The Court reserves decision on whether to so-order the voluntary dismissal. Ordered by Judge Eric N. Vitaliano on 6/18/2019. (Gottlieb, Spencer) (Entered: 06/18/2019)

In other words, the sole basis cited by the district court for not complying with the notice of dismissal and this Court's precedents in *Thorp*, *ISC Holding*, *A.B. Dick*, etc., was this Court's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), which requires court approval of waiver/settlement of FLSA wages and rights in actions that are being dismissed with prejudice.

Although there was no settlement as the district court was notified on June 24, 2019 (A26), because the district court in its order (A3), took the view in essence that agreement/actions, that would have a "potential preclusive effect" on Plaintiff's FLSA claims/rights, are prohibited in the context of *Cheeks*, we pointed out that Defendants' purported arbitration agreement would have a "potential preclusive effect" on the FLSA/NYLL claims for several reasons including the reasons set forth above for filing the notice of dismissal in the first place – in essence, that the purported arbitration agreement waives and destroys the claims in

6

violation of effective indication doctrine under the FAA and the prohibition against waiver of rights under the FLSA/NYLL and interpreting case law – including *Cheeks* which was relied upon by the district court itself.

In sum, if *Cheeks* did not apply – and the district court eventually appear to conclude that it did not, then the case was automatically terminated with the filing of the notice of voluntary dismissal pursuant to FRCP Rule 41 on June 17, 2019. In the briefing that followed, Plaintiff argued in the context of *Cheeks* and the district court's June 18, 2019 order that the purported arbitration agreement would have a "potential preclusive effect" on the Plaintiff's FLSA claims. On December 22, 2020, the district court issued its ruling vacating the notice of dismissal and compelling arbitration. (A74-A84).

The district court was correct in "setting aside" the argument that Plaintiff withdrew the notice of dismissal – because Plaintiff did not and could not withdraw or vacate the notice of dismissal as further explained below. However, without citation to any cases, the lower court held that the FAA negated and required vacating the notice of dismissal and ordering of the case to arbitration – in violation of this Court's precedents in *Thorp*, *ISC Holding, A.B. Dick*, etc., as explained below.

On January 17, 2021, Plaintiff timely filed a notice of appeal. (A85-A86). This brief now constitutes the perfection of the appeal.

## IV.    SUMMARY OF ARGUMENTS

It is well settled that unless an exception applies, a notice of dismissal under FRCP Rule 41(a)(1)(A)(i), is effective upon filing, does not require the signature or approval of the Court, terminates the action and divests the Court of jurisdiction before an answer or summary judgment motion is filed. See. *ISC Holding; Thorp; A.B. Dick*; *Cheeks,* 796 F.3d at 201–02, citing *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir.1998).

The district court was correct in "setting aside" the argument that Plaintiff withdrew or vacated the notice of dismissal. In this regard, *Cheeks* did recognize an exception to FRCP Rule 41 for FLSA dismissals with prejudice and once the district court invoked *Cheeks* in response to the notice of dismissal, Plaintiff merely argued that the purported arbitration agreement would create a "potential preclusive effect" as to the FLSA and NYLL claims and therefore the case could continue in court under the exception recognized in *Cheeks* and as invoked by the district court in its June 18, 2019 order. Therefore, once the district court concluded in its December 22, 2020 order that the exception under *Cheeks* did not apply in terms of the "potential preclusive effect" on the FLSA claims created by the purported arbitration agreement, the notice of dismissal remained in effect and divested the district court of jurisdiction as of the date of its filing on June 17, 2019.

However, the district court nonetheless vacated the notice of dismissal on grounds that the FAA negated the notice of dismissal, and therefore required the case to be sent to arbitration despite the filing of a notice of dismissal under FRCP Rule 41(a)(1)(A)(i). Notably, the district court did not cite any case law in support of its ruling based on the FAA and FRCP 41. By contrast, the Second Circuit in *ISC Holding*, held that the FAA and a motion to compel arbitration do not negate or vacate a notice of dismissal pursuant to FRCP Rule 41(a)(1)(A)(i), where, as here, there was an opportunity to file and answer and/or motion for summary judgment. Notably, FRCP Rule 41 does not contain any exception for the FAA and the FAA does not contain any exception to FRCP 41. Also, while lacking any case law support and being in conflict with this Court's precedents in *ISC Holding, Thorp*, and *A.B. Dick*, the lower court's interpretation is unreasonable and also appears to violate the absurdity doctrine – the FAA does not force anyone to engage in litigation against their will – it only requires those who freely chose on their own to litigate or continue litigating, to do so in an arbitral forum where appropriate based on a valid and enforceable arbitration agreement, etc.

In addition, the district court could not vacate the notice of voluntary dismissal and compel arbitration under the FAA for two additional compelling reasons.

First, the purported arbitration agreement on its face, allowed for a "judicial" complaint for the claims herein, and even the district court itself found that there was "some ambiguity" - which under contract law and the FAA is a material issue of fact to be decided by a jury at trial and not by the judge on a motion to compel arbitration which is evaluated under the summary judgment standard and requires an absence of material factual disputes.

Second, the purported arbitration agreement, as written, is invalid and unenforceable under the FLSA because it requires Plaintiff to waive statutory rights such as overtimes wages, liquidated damages, penalties, costs and attorney fee rights as further explained below – such a waiver of rights is prohibited under settled FLSA jurisprudence and also violates the effective vindication doctrine of the FAA as several courts have found.

## V.    ARGUMENTS

### 1. THE FILING OF THE NOTICE OF DISMISSAL ON JUNE 17, 2019, PURSUANT TO FRCP 41(a)(1)(A)(i), TERMINATED THIS ACTION AND DIVESTED THE DISTRICT COURT OF JURISDICTION

It is well settled that unless an exception applies, a notice of voluntary dismissal filed pursuant to FRCP 41(a)(1)(A)(i) - before an answer or motion for summary judgment is served, terminates the action and divests the court of jurisdiction. *ISC Holding* (holding that the FAA and a motion to compel arbitration

do not negate or vacate a notice of dismissal pursuant to FRCP Rule 41(a)(1)(A)(i), where, as here, there was an opportunity to file and answer and/or motion for summary judgment); *Hamilton v. Shearson-Lehman Am. Exp., Inc.,* 813 F.2d 1532, 1534 (9th Cir. 1987) (holding that the filing of a FRCP Rule 41(a)(1)(A)(i) notice of dismissal after a motion and order to compel arbitration terminates the action because "The language of this rule leaves little room for interpretation. Until an adverse party files an answer or a motion for summary judgment, the plaintiff can have the action dismissed merely by filing a notice of dismissal with the clerk. Rule 41(a)(1)(i) does not require leave of court to dismiss the action"); *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501 (2d Cir. 1952) ("voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned the same as though the suit had never been brought, thus vitiating and annulling all prior proceedings and orders in the case, and terminating jurisdiction over it for the reason that the case has become moot."); *Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir.1979); *Santiago v. Victim Serv. Agency of the Metro. Assistance Corp.*, 753 F. 2d 219, 221 (2d Cir.1985); *Hill v. W. Bruns & Co.,* 498 F.2d 565, 567 n. 2 (2d Cir.1974). See also, *Cheeks,* 796 F.3d at 201–02, citing *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir.1998).

### (A) FLSA/NYLL SETTLEMENTS AND DISMISSALS WITHOUT PREJUDICE DO NOT REQUIRE COURT APPROVAL – BUT IN ANY EVENT, THERE WAS NO SETTLEMENT IN THIS CASE

On June 18, 2019, the district court issued an order taking the position that FLSA dismissals without prejudice require court approval because the dismissal may create a "potential preclusive effect" (A3)[2], as to the FLSA claims. In *Cheeks*, this Court specifically left open the question of whether FLSA dismissals *without* prejudice require court approval. See *Cheeks*, 796 F.3d at 201 fn 2 ("As it is not before us, we leave for another day the question of whether parties may settle such cases without court approval or DOL supervision by entering into a Rule 41(a)(1)(A) stipulation without prejudice.").

This Court's holding in *Cheeks* requiring court approval of FLSA settlements and dismissals with prejudice was based on the premise that dismissals *with prejudice* prevent the FLSA plaintiff from reasserting his claims in the future – the same is not true for dismissals *without* prejudice unless there was a prior dismissal, which is not the case here. See FRCP 41(a)(1)(B). Notably, *Cheeks* itself was ultimately dismissed without prejudice and without court approval. See

---

[2] Even though there was no settlement, we do not believe that dismissal without prejudice in this case would have required court approval even if there was a settlement. However, in light of the district court's order based on "potential preclusive effect" of agreements and actions on FLSA claims, we argued that the purported arbitration agreement in this case would in fact destroy, waive and create a preclusive effect as to Plaintiff's FLSA claims and that this may create an exception to FRCP Rule 41 based on *Cheeks* – which could allow the claims to continue in federal court.

*Cheeks v. Freeport Pancake House, Inc. et al,* Case No. 12-cv-04199, ECF Nos. 29, 28, (Judge Seybert). See also, *Martinez v. Gulluoglu LLC*, No. 15 CIV. 2727 (PAE), 2016 WL 206474, at 3 (S.D.N.Y. Jan. 15, 2016) ("The parties may stipulate to a dismissal of this case without prejudice, as such settlements do not require court approval. See *Cheeks*, 796 F.3d at 201 n.2"); *Jimenez v. LGL2 Bronx Portfolio LLC*, No. 15-CV-9331 (S.D.N.Y. Oct.7, 2016) (holding that the parties may "Stipulate to dismissal of the case without prejudice, which the Court need not approve under current Second Circuit case law, see *Cheeks*, 796 F.3d at 201 n.2."). See *Baby v. Nissan Enterprises, Inc. et al*, Case No. 17-cv-03209 (Judge Amon – June 26, 2017), ECF Nos. 8, 7 (dismissing without prejudice and without court approval after being notified of FLSA settlement and court approval issue); *Hierro v. Caticho Inc. et al*, Case No. 17-CV-05698, ECF No. 16-18 (Judge Nathan – October 4, 2017)(Same). The exception to *Cheeks* for dismissals without prejudice applies with even greater force where the dismissal is as of right pursuant to FRCP Rule 41(a)(1)(A)(i), as opposed to a stipulated dismissal. See i.e., *Thorp v. Scarne,* 599 F.2d 1169, 1176 (2d Cir.1979) ("In contrast to other methods of dismissal contemplated by Rule 41, voluntary dismissal prior to answer or a motion for summary judgment is effective in the absence of any action by the court."); *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501 (2d Cir. 1952) ("voluntary dismissal of a suit leaves the situation so far as procedures therein are concerned the same as though

the suit had never been brought, thus vitiating and annulling all prior proceedings and orders in the case, and terminating jurisdiction over it for the reason that the case has become moot.").

In any event, there was no settlement in this case, and as such, court approval was not required even if settlements and dismissals without prejudice required Court approval under *Cheeks*.

### (B) PLAINTIFF DID NOT AND COULD NOT WITHDRAW OR VACATE THE NOTICE OF DISMISSAL

In its ruling the district court stated in relevant part as follows (A82):

> Samake argues that should the Court find, as it has, his claims arbitrable, it should grant and order his earlier motion for voluntary dismissal rather than compel arbitration. Even setting aside the fact that Samake subsequently withdrew that motion, FAA leaves no room for discretion

By way of correction/clarification, Plaintiff did not make a *motion* for voluntary dismissal and could not have withdrawn a motion he did not make. In this regard, Plaintiff filed a *notice* of voluntary dismissal under FRCP Rule 41(a)(1)(A)(i), which, unlike a motion, did not require the approval of the district court - it was effective upon filing, where, as here, the district court itself appear to find that *Cheeks* did not apply. See *Thorp*; *ISC Holding; A.B. Dick*.

Plaintiff's argument in his June 24, 2019 letter (A26-A27), and subsequent briefing (A59-A62), was in the context of *Cheeks* which could be an exception to Rule 41 as this Court held in *Cheeks*, and especially in light of the district court's

concerns and June 18, 2019 order about agreements/actions having a "potential preclusive effect" on FLSA claims. (See i.e. A3). In this regard, Plaintiff argued in relevant part as follows (A63):

> In the event this Court concludes that the purported arbitration agreement does not create a "potential preclusive effect" as to the FLSA and NYLL claims and/or concludes that arbitration should be compelled in this matter, and that there are no impediments under *Cheeks* or the FLSA, Plaintiff's notice filed on June 17, 2019 (ECF No. 12), would control and effectuate the dismissal of the case without prejudice.

Once again, the only reason there was activity in this case after the filing of the June 17, 2019 notice of dismissal was because the district court issued its June 18, 2019 order (A3), based on *Cheeks* – stating in effect that agreements, actions etc., that have a "potential preclusive effect" on FLSA claims would be invalid. Notably, the FLSA is not concerned with the name of the agreement or action – it is the content of the agreement or action that matters. Whether the name of the agreement is *settlement,* or *arbitration* or *severance*, or something else - as the district court mentioned, it is the "potential preclusive effect" of such an agreement or action that makes it invalid and unenforceable under the FLSA. As such, if a purported "arbitration" agreement by its language causes destruction, waiver or preclusion of FLSA claims/rights, it is just as invalid as a "settlement" agreement and even more so because unlike a settlement agreement, the employee does not

receive any compensation for his waived/destroyed FLSA claims/rights under the purported arbitration agreement.

Because *Cheeks* created an exception to FRCP Rule 41 and in light of the Court's *Cheeks* order (A3), we notified the district court and also argued that the arbitration agreement in this case did create a "potential preclusive effect" as to the protected FLSA claims – by waiving FLSA claims and rights, and by imposing high costs/fees etc., and as such, the claims could continue in the district court under *Cheeks*. However, once the district court concluded that *Cheeks* did not apply and that the arbitration agreement did not create a preclusive effect under *Cheeks*, no exception to Rule 41 existed at that point, and the notice of dismissal terminated the case and divested the district court of jurisdiction when it was filed on June 17, 2019.

Significantly, there was no request filed with the district court to withdraw or vacate the notice of dismissal. Likewise, Plaintiff is in the best position to speak for himself and he has and is making it clear that he did not withdraw his notice of dismissal – the desire of Defendants for the notice to be withdraw cannot overcome the facts and law and Plaintiff's position to the contrary.

In addition, and very importantly, the Plaintiff could not have withdrawn or vacated the notice of dismissal as the legal requirements for doing so were clearly not met and a party cannot confer subject matter jurisdiction on a court and a court

cannot confer subject matter jurisdiction upon itself. In *Thorp*, for example, this Court equated vacating the notice of dismissal with an FRCP Rule 60 motion to vacate a judgment. The burden on such a motion is extremely high – the moving party must show fraud, mistake, etc., or extraordinary circumstances – none of which are even remotely in existence in this case. Here, Plaintiff did not even make a motion, did not request vacatur, did not allege or prove any of the requirements for vacatur – such as fraud, mistake, or extraordinary circumstances, etc.

In fact, Plaintiff compellingly states that he did not and does not seek to vacate or withdraw the notice of dismissal. Obviously, the Plaintiff filed a notice of dismissal because he wanted to discontinue the case – he did not file the notice of dismissal because he wanted to continue the case.

Moreover, once the district court lost jurisdiction with the filing of the notice of dismissal on June 17, 2019, the parties could not confer jurisdiction on the district court by agreement, consent or otherwise. See i.e. *Am. Fire & Casualty Co. v. Finn*, 341 U.S. 6, 18 n. 17 (1951) ("It needs no citation of authorities to show that the mere consent of parties cannot confer upon a court of the United States the jurisdiction to hear and decide a case."); See also, *In re Stable Mews Assocs.*, 778 F.2d 121, 125 (2d Cir.1985) ("Even the express agreement of all parties, however, cannot confer subject matter jurisdiction where it does not exist."); Yong Qin Luo

v. Mikel, 625 F.3d 772, 775 (2d Cir.2010) ("[s]ubject matter jurisdiction cannot be waived").

Furthermore, "[i]t is axiomatic that a lack of subject matter jurisdiction may be raised at any time." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir.2000).

As such, the district court was correct in "setting aside" the argument that Plaintiff had withdrawn or vacated his notice of dismissal – because Plaintiff did not and could not do so.

### (C) IN LIGHT OF THE SECOND CIRCUIT'S DECISION IN *ISC HOLDING*, THE FAA DID NOT NEGATE THE EFFECT OF THE RULE 41 NOTICE OF DISMISSAL BECAUSE DEFENDANTS IN THIS CASE HAD THE OPPORTUNITY TO SERVE AN ANSWER AND/OR MOTION FOR SUMMARY JUDGMENT BUT DID NOT

We make this important and compelling argument at this stage because it builds on the points and arguments above. In vacating the notice of voluntary dismissal, the district court stated in relevant part as follows (A82):

> If a court finds an agreement to arbitrate, FAA directs that the court then "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

However, missing from the district court's quotation of 9 U.S.C. § 3, is the language "the court in which such *suit is pending*." Here, because the notice of dismissal automatically terminated this lawsuit, there was no action, lawsuit or

claim pending that could be sent to arbitration under the plain language of the

FAA at 9 U.S.C. § 3. By way of reinforcement, the FAA does not force anyone

to engage in litigation as that would also be illogical and absurd – it only

requires people who chose to litigate to do so in an arbitral forum instead of a

judicial forum, where appropriate based on a valid and enforceable arbitration

agreement, etc. As such, if a plaintiff does not want to litigate in court or

arbitration, there is nothing in the text, history or logic of the FAA that requires

him to litigate in court or in arbitration against his wishes.

    More compelling, however, and contrary to the district court's rulings, the

Second Circuit has held in *ISC Holding*, that where, as here, there was an

opportunity to file an answer and/or a motion for summary judgment as

mentioned in FRCP 41, then the Plaintiff's filing of a notice of dismissal

pursuant to FRCP Rule 41(a)(1)(A)(i) divests the district court of jurisdiction.

See i.e. *A.B. Dick Co. v. Marr*, 197 F.2d 498, 501 (2d Cir. 1952) ("voluntary

dismissal of a suit leaves the situation so far as procedures therein are concerned

the same as though the suit had never been brought, thus vitiating and annulling

all prior proceedings and orders in the case, and terminating jurisdiction over it

for the reason that the case has become moot."); *Thorp v. Scarne*, 599 F.2d 1169,

1176 (2d Cir.1979); *Santiago v. Victim Serv. Agency of the Metro. Assistance

Corp.*, 753 F. 2d 219, 221 (2d Cir.1985); *Hill v. W. Bruns & Co.,* 498 F.2d 565,

567 n. 2 (2d Cir.1974). See also, *Cheeks,* 796 F.3d at 201–02, citing *Hester Indus., Inc. v. Tyson Foods, Inc.*, 160 F.3d 911, 916 (2d Cir.1998). Here, it is undisputed that Defendants had an opportunity and a right to serve an answer to the complaint and that Defendants also had the opportunity and right to serve a motion for summary judgment if they so chose.

In *ISC Holding* and *Hamilton*, all three judges comprising the Second Circuit panel, agreed that where there is an opportunity to serve an answer and/or motion for summary judgment, then the party filing the action can discontinue it as of right as set forth in *Thorp,* etc., before an answer or summary judgment motion is filed. In other words, there was no split in the panel that in the circumstances presented here, the case was dismissed, and the lower court was divested of jurisdiction upon the filing of the notice of dismissal. See also *Hamilton*.

However, the panel in *ISC Holding*, split 2-1 on the question of whether a party can discontinue an action FRCP 41(a)(1)(A)(i), where the action was commenced by petition which does not require an answer, instead of by a pleading which requires an answer - such as a complaint to which an answer can be served. The majority of the split panel in *ISC Holding*, held that because a petition is in effect a motion and not a pleading, the party against whom the arbitration petition is filed, does not have an opportunity to serve an answer, and

as such, the split panel in *ISC Holding* held that FRCP 41(a)(1)(A)(i), does not apply in actions commenced by petition. In making this distinction and exception for actions commenced by petition, even the majority in the split decision noted that "the question is not without difficulty" – as it was a narrow exception to the plain text of FRCP Rule 41 as well as settled jurisprudence as reflected in *Thorp* etc.

The majority in the split decision in *ISC Holding*, described the situation in that case as "this particular, and unusual, procedural circumstance" – an unusual situation where an action or proceeding is commenced by petition that does not afford the opposing party the opportunity to serve an answer or motion for summary judgment. Here, by contrast, it is undisputed that Defendants had the opportunity to serve an answer and/or motion for summary judgment which it did not do.

Finally, Plaintiff believes that the split decision in ISC Holding finding that FRCP 41(a)(1)(A)(i) does not apply to actions commenced by petition, is incorrect and believe the dissenting Judge is correct. However, as we have pointed out, all three judges in ISC Holding (2012) agreed that the notice of dismissal under FRCP 41(a)(1)(A)(i) in this case would control because Defendants in this case had an opportunity to serve and answer and/or motion for summary judgment. We also recognize that a three-judge panel is bound by

the decision of the majority in ISC Holding. Nonetheless, we raise our disagreement in order to preserve it for further higher level review if necessary – such as before an en banc panel of this Court or before the U.S. Supreme Court.

## 2. IN ADDITION, THE FAA DID NOT NEGATE THE EFFECT OF THE RULE 41 NOTICE BECAUSE THE REQUIREMENTS TO COMPEL ARBITRATION UNDER THE FAA WERE NOT MET

In addition to the points above, the district court could not invoke the FAA to vacate the Rule 41 notice of dismissal and order arbitration because the purported arbitration agreement violated law and public policy and was therefore invalid and unenforceable under the FAA and the FLSA/NYLL – at minimum, there were issues of fact requiring a jury trial as provided for under the FAA at 9 USC 4. In this regard, the court in *Espinosa v. SNAP Logistics Corp.,* No. 17 CIV. 6383 (AT), 2018 WL 9563311, at 5 (S.D.N.Y. Apr. 3, 2018), citing the U.S. Supreme Court in *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) stated in relevant part as follows:

> The Supreme Court has set forth an "effective vindication" exception to the FAA that permits courts to invalidate "on 'public policy' grounds" agreements that "operat[e] ... as a prospective waiver of a party's right to pursue [federal] statutory remedies." Am. Exp. Co. v. Italian Colors Rest., 570 U.S. 228, 235 (2013) (first and second alterations in original) (emphasis omitted) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)). It has explained that this exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." Id. at 236.

Also, the U.S. Supreme Court as well as the Second Circuit have repeatedly held that agreements or acts waiving or impairing FLSA rights are invalid, void and unenforceable. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 (1946); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015)(requiring court approval of any waiver of any FLSA rights and wages); NYLL § 663 ("Any agreement between the employee, and the employer to work for less than such wage shall be no defense to such action."). In fact, the Second Circuit has gone even further and while noting in *Cheeks* that the FLSA is a "uniquely protective statute," held that courts must conduct proceedings (motions, hearing, etc.), to ensure that FLSA rights are not waived and waived improperly. Ironically, after the notice of dismissal was filed, the lower court itself issued an order under *Cheeks*, which in effect said any agreement or action that had a "potential preclusive effect" as to FLSA rights is invalid. (A3). Once again, the FLSA is not concerned with the name of the agreement or action, it is concerned with what the district court described as the "potential preclusive effect" on FLSA claims/rights. For example, an agreement named the "FLSA Preservation, Advancement and Compliance Agreement" may violate the FLSA if the actual language in the agreement waive or create a "potential preclusive effect" as to FLSA claims/rights.

Therefore, in light of the FAA, *Italian Colors,* and the FLSA/*Cheeks*, etc., the district court erred in ruling that it was for the arbitrator and not the court to decide whether the purported arbitration agreement was valid and enforceable under the FAA's effective vindication doctrine, and under the FLSA/*Cheeks* etc. See also, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537–38, 202 L. Ed. 2d 536 (2019) (the issue of whether arbitration can be compelled under the FAA is for the court to make and not the arbitrator – arbitration cannot be compelled under the FAA where the purported arbitration agreement is invalid and unenforceable.).

### (A) THE PURPORTED ARBITRATION AGREEMENT CONTAINS ILLEGAL PROVISIONS WHICH RENDER IT INVALID AND UNENFOCEABLE UNDER THE FLSA AND FAA

Had the court addressed the subject improper provisions in the arbitration agreement, it would have been required to conclude that the provisions waiving overtime wages, liquidated damages, penalties, and attorney fees/costs rights, etc., are invalid under both the FAA and the FLSA. We begin with the following waiver language in the agreement which states in relevant part as follows (A17 ¶ 1):

> Timely Notice of Dispute and Good-Faith Attempt to Resolve. You agree to provide written notice, including a detailed description and sum-certain demand, of any claim to the Company no later than one (1) year after You knew or should have known of the existence of the potential dispute. *Otherwise, the claim will be deemed waived*. The filing of any other kind of complaint (whether administrative, judicial, or otherwise, is not a will not extend the one-year claim period contemplated herein (but nothing in this Agreement forecloses the

filing of any such complaints). Said written notice of the purported dispute, shall be mailed to the Company at 474 Coney Island Ave Brooklyn, New York 11218, certified mail, return receipt requested. Within sixty (60) of receipt by Company, both Parties, along with counsel, if applicable, agree to meet and confer, in a manner and at a location mutually agreed-upon, and engage in good-faith discussions in an effort to resolve the dispute. Any resolution shall be memorialized in a writing signed by both Parties. The Parties agree that the notice provision contained herein is considered a condition precedent to the instituting of any arbitration action. Failure to provide said notice, or refusal to engage in good-faith discussions, shall be grounds for dismissing any prematurely filed arbitration action.

The above provision from the purported arbitration agreement requires a notice of claim procedure within a limitations period of only one (1) year from accrual of the claim. (A17 ¶ 1). However, the FLSA does not require any such notice or procedure as a condition precedent to an employee recovering wages protected under the statute. Moreover, the FLSA and NYLL provide a three-year and six-year statute of limitations respectively, and as such, the one-year statute of limitations imposed by the purported arbitration agreement unlawfully effectuated a waiver of about five (5) years' worth of wages under the FLSA and NYLL. *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 198 (2d Cir. 2013). ("The cause of action for FLSA and NYLL claims accrues on the next regular payday following the work period when services are rendered. 29 C.F.R. § 790.21(b) (2012)").

As the legendary Judge Friendly reasoned for this Court in *Caserta v. Home Lines Agency, Inc.,* 273 F.2d 943, 946 (2d Cir. 1959) "this case lies in an area where agreements and other acts that would normally have controlling legal significance are overcome by Congressional policy," and that if an FLSA plaintiff cannot waive his FLSA wages and rights by voluntarily entering into a settlement agreement, as was the case in *Brooklyn Saving* and *Gangi*, he certainly cannot waive wages and rights under the FLSA by lesser means such as action or inaction. As such, failure to comply with pre-suit requirements not required or even permitted by the FLSA cannot be the basis for dismissal or waiver of FLSA claims as would be the case under Defendants purported arbitration agreement. Similarly, in shortening the limitations period to one year, the purported arbitration agreement specifically, obviously and unlawfully waived and forfeited FLSA wages and claims that fall within the FLSA's three-year statute of limitations period.

The purported arbitration agreement also improperly waives and forfeits Plaintiff' rights under the FLSA and NYLL as to legal fees when it states in relevant part as follows (A18 ¶ 4):

> Costs, Fees, and Expenses. You will be responsible for paying any filing fee in the event You initiate a claim. Subsequent costs of arbitration (including but not limited to fees charged by the AAA, the Arbitrator, or related expenses) shall be borne equally by each Party at the time said costs or fees come due. Each Party will pay in the first

instance its own litigation costs and attorneys' fees, if any. However, absent a later agreement to the contrary, the prevailing Party shall be entitled to recover reasonable attorneys' fees from the losing Party.

Under the FLSA at 29 USC 216(b) and NYLL 663(1), only the prevailing plaintiff has a right to recover legal fees – the prevailing defendant does not have a right to recover fees. As such, under the FLSA and NYLL, Plaintiff is given the significant right of not having to pay the legal fees of Defendants if he loses his case – without this right and guarantee, few if any employees protected by the FLSA will ever seek the protection of the statute and the FLSA would become virtually useless – a recognition that led Congress to allow fees to the prevailing plaintiff/employee but not the prevailing defendant/employer. However, in contravention of the FLSA, the purported arbitration agreement require Plaintiff to pay the legal fees of Defendants if they win. Just as egregious and unlawful, and even more so, is the provision in the purported arbitration agreement, requiring Plaintiff to pay the legal fees of Defendants if Plaintiff challenges the unlawful arbitration agreement and loses. (A19 ¶ 8).

Similarly, the purported arbitration agreement improperly waives and forfeits Plaintiff's rights to liquidated damages and penalties and states in relevant part as follows (A18 ¶ 3):

> The Arbitrator shall possess no authority to award punitive, consequential, special, or indirect damages, nor shall the Arbitrator be entitled to issue injunctive and other equitable relief.

The court in *Toure v. Thunder Lube Inc.,* No. 17CV0657DLIJO, 2019 WL 4805197 at 5 (E.D.N.Y. Sept. 30, 2019), invalidated similar provisions in an arbitration agreement waiving attorney fee rights, liquidated damages, etc. and stated in relevant part as follows:

> However, the provisions of the Agreement that surrender Plaintiff's statutory rights under the FLSA and NYLL and the Agreement's cost-shifting provision are unenforceable as against public policy. The Supreme Court has set forth an "effective vindication" exception to the FAA that permits courts to invalidate "on 'public policy' grounds" agreements that "operat[e] ... as a prospective waiver of a party's right to pursue [federal] statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (first and second alterations in original) (emphasis omitted) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). It has explained that this exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* at 236.
>
> The FLSA and NYLL, both beneficent statutes intended to protect workers, require defendant employers to pay the attorneys' fees of prevailing plaintiff workers to encourage "private attorneys general" to enforce the statute. *See, Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094, 2014 WL 4670870, at 12 (S.D.N.Y. Sept. 19, 2014); *See also, Fernandez v. Kinray, Inc.*, No. 13-cv-4938, 2014 WL 12778829, at 7 (E.D.N.Y. Feb. 5, 2014). This compensation mechanism is "key to the effective enforcement" of both statutes. *Fernandez*, 2014 WL 12778829, at 7. Similarly, liquidated damages are substantive rights available under both the FLSA and NYLL. *See*, 29 U.S.C. §§ 216(b), 217; N.Y. Labor Law §§ 198(1–a), 663(1).
>
> Here, the Agreement's provisions that waive Plaintiff's right to seek liquidated damages, equitable relief, and attorneys' fees, as well as its cost shifting provision, are unenforceable. These provisions are

invalid because they act as a "prospective waiver of [Plaintiff's] right to pursue statutory remedies." *Am. Exp.*, 570 U.S. at 236 (emphasis omitted) (quoting *Mitsubishi Motors*, 473 U.S. at 628). The Agreement's cost shifting provision also prevents the "effective vindication" of Plaintiff's FLSA and NYLL rights and, thus, is void. *See, Bynum v. Maplebear Inc.*, 160 F. Supp. 3d 527, 537 (E.D.N.Y. 2016).

Because there are so many unlawful positions that form the core of the purported agreement, the purported agreement cannot stand without these provisions, especially in light of the material ambiguities, set forth below. Even worse, by not removing the unlawful provisions, the agreement with these unlawful provisions cannot be enforced under the FLSA and the FAA.

**(B) THE AMBIGUITIES RECOGNIZED BY THE DISTRICT COURT ITSELF RENDERS THE PURPORTED ARBITRATION AGREEMENT UNENFORCEABLE UNDER THE FAA – ESPECIALLY AT THE MOTION STAGE AND BEFORE A TRIAL – AT MINIMUM, A TRIAL IS REQUIRED AS PROVIDED FOR BY THE FAA AT 9 USC 4**

The FAA also cannot be the basis for vacating the notice of dismissal, because the purported arbitration agreement (A17-A20), is ambiguous - it states that Plaintiff can file his claims in court while also stating that Plaintiff must arbitrate his claims – such ambiguity must be resolved in favor of Plaintiff and requires a denial of Defendants' motion to compel arbitration – at minimum Plaintiff would be entitled to a jury trial to resolve such ambiguities as provided for in the FAA at 9 USC 4 – the standard on a motion to compel arbitration is the

summary judgement standard which requires an absence of material factual disputes and ambiguities. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016). Specifically, paragraph 1 of the purported arbitration agreement states in relevant part as follows (A17):

> You agree to provide written notice, including a detailed description and sum-certain demand, of any claim to the Company no later than one (1) year after You knew or should have known of the existence of the potential dispute. The filing of any other kind of complaint (whether administrative, *judicial*, or otherwise, is not a will not extend the one-year claim period contemplated herein (*but nothing in this Agreement forecloses the filing of any such complaints*).

The above text specifically states that a complaint other than the notice/complaint to the employer – such as a "judicial" complaint, is permitted for claims – like those in this case. In fact, the purported agreement specifically states that "nothing in this Agreement forecloses the filing of any such complaints" – "administrative, *judicial*, or otherwise." On the other hand, the purported agreement also states that "You agree to resolve, by *arbitration*, any and all claims or controversies…"

Because the two subject provisions set forth above directly conflict with and contradict each other, the purported arbitration agreement is ambiguous as to a very material issue (judicial forum or arbitral forum) – thus requiring a denial of the motion to compel arbitration. The district court recognized that "ambiguity in the language of an agreement defining arbitrability can provide an escape hatch,"

and the district court actually found that "indeed, there is some ambiguity." At this point where the district court concluded that there is ambiguity - especially as to material terms and subject matter (judicial forum or arbitral forum), the question is no longer whether there is ambiguity, it is who should resolve the ambiguity and how. It is well settled that material ambiguities cannot be resolved by a judge under a summary judgment standard that is used on a motion to compel, and must be resolved by a jury at trial on the issue after appropriate discovery – here, Plaintiff requested a jury trial as provided for under the FAA at 9 USC 4. See i.e. *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)("In a contract dispute a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning."); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 68 (2d Cir. 2000) ("In cases of doubt or ambiguity, a contract must be construed most strongly against the party who prepared it, and favorably to a party who had no voice in the selection of its language (67 Wall St. Co. v. Franklin Natl. Bank, 37 N.Y.2d 245, 249, 371 N.Y.S.2d 915, 333 N.E.2d 184)").

The district court appear to agree that the type of ambiguity in this case involving language that a case can be brought in a judicial or arbitral forum, is very similar to the type of ambiguity this Court found in *ISC Holding AG v. Nobel Biocare Investments N.V.*, 351 F. App'x 480 (2d Cir. 2009), in which the Second

Circuit vacated and remanded so that discovery and a trial on the arbitration issue could be conducted. However, the district court failed in its attempt to distinguish *ISC Holding* (2009), as follows (A78):

> Unlike the single arbitration clause at issue in Nobel, here there is an entire four-page contract, entitled "Alternative Dispute Resolution Agreement," which requires arbitration as the sole method for resolving disputes.

The law and contract interpretation does not work in this manner suggested by the district court in the above excerpt. First, it is not the name of the purported agreement that controls - it is the content. Here, the content and language of the purported agreement specifically provided for a "judicial" complaint for the claims here. Moreover, the subject provision in *ISC Holding* (2009), was named "arbitration" – using the district court's logic, because the name was "arbitration" there could not be any ambiguity and the parties had to arbitrate – although this Court found ambiguity and required discovery and a trial. Second, contrary to the district court's logic, a single sentence or even a single word can carry the day and trump other provisions to the contrary, especially when other factors are taken into account. In this regard, the district court's reliance on other provisions is destroyed by the language of the purported agreement itself, which specifically states that "nothing in this Agreement forecloses the filing of any such complaints" – "administrative, *judicial*, or otherwise" – language which the district court did not

address. In other words, the purported agreement makes clear that nothing in it –
including other parts of the purported agreement relied upon by the district court,
"forecloses the filing of" a "judicial" complaint for the claims herein. As such, this
case is much more compelling in Plaintiff's favor than *ISC Holding* (2009) was for
the Plaintiff in that case – especially, where, as here, the district court itself found
ambiguity as to a material term/issue. Therefore, a reasonable jury can reasonably
and easily conclude that Defendants fail to carry their high burden of proof and
that the Plaintiff can file and litigate his clams in Court.

Simply put, the choice of which of the conflicting material interpretations to
choose (judicial forum or arbitral forum), belongs to a jury in a trial and not to the
judge on a motion under the summary judgment standard. Unlike the district court,
the jury is also likely to hear from those who drafted the purported agreement – as
we explained above, Defendants' failure to even put forth testimony from the
drafters of the purported agreement as to the conflicting language requires the
denial of its motion to compel with prejudice.

A jury is also likely to consider other ambiguities and inconsistencies in the
agreement which can hurt Defendants on this issue. For example, the purported
agreement also seeks to incorporate the rules of the American Arbitration
Association but as we explained (A70-A72), those rules appear to conflict with
other material provisions in the purported agreement concerning cost sharing and

fee shifting, etc. Apparently realizing that this is a major problem, the district court argued that the rules of the AAA will control because the purported arbitration agreement does not state that it will control over AAA. (A80). However, the district court agreed that New York contract law applies and the New York Court of Appeals has disagreed with the district court on this issue. See *Brady v. Williams Capital Grp., L.P.*, 14 N.Y.3d 459, 465, 928 N.E.2d 383, 386 (2010) ("At the outset we agree with the lower courts that the terms of the parties' Arbitration Agreement, rather than the AAA rules, controlled" – without any exception for situations in which the purported agreement does not state that it trumped the AAA rules.).

In addition, a jury is also likely to learn from testimony and other evidence, what appears obvious from the text of the agreement itself – that the purpose of the agreement was not to arbitrate claims but it was to destroy the claims and prevent Plaintiff from bringing claims in the first place – because of insurmountable barriers such as additional notice periods, shortening of the limitations period/waiver of wages, waiver of liquidated damages and penalties, waiver of fee rights, imposition of costs sharing, etc.

Moreover, a jury is also likely to hear that it is also not uncommon for drafters of a contract to adopt ambiguity on purpose and deliberately – so as to keep options open at a later stage. In fact, it is not uncommon for employers to

utilize the judicial system when they have a claim against the employee but at the same time to try to require the employee to utilize an arbitral forum when the employee has a claim against the employer. By way of reinforcement, the purported agreement requires Plaintiff to pay legal fees to Defendants if his challenge to the purported agreement fails but does not require the same of the Defendants. (A18 ¶ 6). As such, if Defendants were to utilize the language in the purported arbitration agreement allowing a "judicial" complaint, to use a judicial forum in situations where they have a claim against the Plaintiff, Plaintiff will be deterred from challenging that interpretation because of the risk of having to pay legal fees if he loses the challenge, and for this reason as well, he will be deterred from challenging Defendants' interpretation that Plaintiff must arbitrate his claims – thus allowing Defendants who drafted the agreement to have it both ways through deliberate ambiguity and double standards, especially when the agreement is viewed as a whole including the fee provisions. For these reasons as well, and given that the ambiguity must be resolved against Defendants as drafters, a reasonable jury will be compelled to interpret the purported arbitration agreement as allowing for a judicial complaint for the claims herein – especially where, as here, the purported arbitration agreement appear to state so in plain language.

### 3. DISMISSAL AS OF RIGHT PURSUANT TO FRCP RULE 41(A)(1)(A)(i) WAS TAILOR MADE FOR SITUATIONS LIKE THE ONE WE HAVE HERE

Dismissal as of right pursuant to FRCP Ruel 41(a)(1)(A)(i) was tailor made for situations like the one we have here. As set forth above, the notice of dismissal was filed very early in the case - soon after the arbitration issue arose and before an answer or summary judgment motion was filed. Notably, arbitration is an affirmative defense under FRCP 8(c)(1) which does not have to be pleaded or mentioned by Plaintiff in the complaint. As an affirmative defense which the Defendants must plead and prove, the arbitration affirmative defense can also be waived.

In any event, we have explained that Plaintiff and Plaintiff's counsel were not aware of any arbitration agreement in this case until a copy was provided by defense counsel after the case was filed. It would not be surprising if all of us – including lawyers, judges, etc., are parties to numerous arbitration agreements of which we are unaware – with employers, online vendors like Amazon, banks, brokerages, insurance companies, Uber/taxi companies, etc. - this is especially true in the context of the employment relationship where many different papers are signed and where there are language barriers as well. Nonetheless, Plaintiff herein, is still not convinced that he signed or entered into the purported arbitration agreement, especially given that the original was never produced under the best

evidence rule. See i.e., *Gomez v. Winn Management Group LLC*, Case No. 18-CV-8559, ECF No. 21 (SDNY, 2019) (court denied motion to compel arbitration where Plaintiff was in hospital at time arbitration agreement was purportedly signed – creating serious question as to whether arbitration agreement was signed by Defendant pretending to be Plaintiff). *Ali v. Charter Communications Holding Company, LLC et al*, EDNY Case No. 19-CV-07268 (RRM)(RER) (defendants claimed that the plaintiff had signed the arbitration agreement via email but after the plaintiff explained that he did not use email – and that the purported arbitration agreement was likely completed and signed by the company's manager, defendants moved away from trying to compel arbitration, and settled the case).

Significantly, not only did the Plaintiff's side learn of and read the purported arbitration agreement after this case was filed, upon review, we learned that the purported agreement actually permitted a "judicial" complaint for the claims herein but the district court erroneously concluded otherwise. More troubling, however, the purported agreement contained numerous illegal and improper provisions such as the waiver of significant FLSA rights and wages, liquidated damages, penalties, costs, fees, etc., which made it virtually impossible for Plaintiff to arbitrate given the high risks of losing his wages and rights and also having to pay tens or even hundreds of thousands of dollars to Defendants in legal fees if he loses. Under the purported arbitration agreement, Plaintiff was even at risk of having to pay legal

fees to Defendants if he lost the challenge to the agreement and its illegal provisions.

Also, courts under the FLSA and *Cheeks* are FLSA gatekeepers who have an affirmative duty to prevent improper waiver of rights and wages under the FLSA – as even the district court's June 18, 2020 order alluded to when it invoked *Cheeks*. These are even more reasons why dismissal pursuant to FRCP 41(a)(1)(A)(i) was even more proper in light of the abusive and unlawful purported arbitration agreement.

Finally, the FAA contains no exception to FRCP 41, and FRCP 41 contains no exception for the FAA. Once again, the FAA does not force people to engage in litigation – it only requires those who first freely choose to litigate on their own, to do so in an arbitral forum where such is required by a valid and enforceable arbitration agreement – something that does not exist in this case.

# VI. CONCLUSION

Based on the foregoing, it is respectfully requested that this Honorable Court grant Plaintiff's appeal in its entirety and: 1) terminate this case in the district court in its entirety *without* prejudice as per the notice of dismissal filed by Plaintiff on June 17, 2019; 2) nullify all orders and proceedings in the district court in light of the filing of the notice of dismissal on June 17, 2019; and 3) grant Plaintiff such other, further and different relief in his favor as this Court deems just and brother.

**Dated: Queens Village, New York**
      **February 1, 2021**

Respectfully submitted,

Abdul Hassan Law Group, PLLC

Abdul K. Hassan, Esq. (AH6510)
215-28 Hillside Avenue, Queens Village, NY 11427
Tel: 718-740-1000, Fax: 718-740-2000
Email: abdul@abdulhassan.com

# CERTIFICATION PURSUANT TO
## Fed. R. App. P. 32(a)(7)(B) and (C)

The undersigned hereby certifies that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and (C) because the brief contains 9,568 words of text.

The brief complies with the typeface requirements of Fed. R. App. P.32(a)(5) and the type style requirements of Fed.R.App.P.32(a)(6) because this brief was prepared in a proportionally spaced typeface using Microsoft Word 2007, Times New Roman, Size 14.

Dated: February 1, 2021