# 21-102

IN THE

# United States Court of Appeals

### FOR THE SECOND CIRCUIT

◆◆

SEKOUBA SAMAKE.,

*Plaintiff-Appellant,*

— v.—

THUNDER LUBE, INC., ABKO
ASSOCIATES, INC. and DROR HERSHOWITZ

*Defendants-Appellees,*

—————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

### BRIEF FOR DEFENDANTS-APPELLEES

Law Office of Michael Bruk
138 West 25th St., 10th Floor
Suite C1001
New York, New York, 10001
(212) 203-9303
mb@bruklaw.com

*Attorney for Defendants-Appellees*

## <u>Rule 26.1 Corporate Disclosure Statement</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant

Thunder Lube, Inc. ("Thunder Lube") discloses that it has no parent company and

that no publicly held corporation owns 10% or more of Thunder Lube's stock.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................iii

I. INTRODUCTION ...............................................................2

II. ISSUES PRESENTED FOR REVIEW ...............................................2

III. STATEMENT OF CASE ..........................................................2

   A. Factual Background..........................................................2

      1. Thunder Lube...........................................................2

      2. Samake entered into an Alterantive Dispute
         Resolution Agreement with Thunder Lube .............................3

      3. Samae Agreed to resolve all claims by arbitration....................3

      4. Samake's claims are subject to the ADR Agreemen.....................4

   B. Procedural Background.......................................................5

      1. The Complaint and Motion for Pre-Motion Conference................5

      2. Samake voluntarily dismissed the action, and then
         withdrew said dismissal ...............................................6

      3. The district court granted Thunder Lube's motion
         to compel arbitration..................................................8

IV. SUMMARY OF ARGUMENT ......................................................9

V.   ARGUMENT ............................................................................ 11

   A. SAMAKE'S DISMISSAL WAS WITHDRAWN, AND
     IN ANY EVENT, WAS AN ATTEMPT TO UNDERMINE
     INTERLOCUTORY APPEAL PROCEDURES ....................................... 11

     1. Samake's Notice of Voluntary Dismissal was withdrawn,
       and any related issues waived because they were never
       raised with the district court. ................................................ 11

     2. Even if not waved, Samake's Notice of Voluntary Dismissal
       argument presupposes Thunder Lube's participation in the
       dismissal ......................................................................... 11

     3. Samake's notice of dismissal was an attempt to undermine the
       established procedures for appealing interlocutory orders .................. 15

     4. Samake's notice of dismissal was an attempt to undermine the
       established procedures for appealing interlocutory orders .................. 15

   B. THE PROPER, AND EXCLUSIVE INQUIRY, IS WHETHER
     THE PARTIES AGREED TO ARBITRATE CLAIMS
     AND WHETHER THE UNDERLYING CLAIMS
     ARE ARBITRABLE ................................................................. 16

     1. The parties agreed to arbitrate ............................................. 16

     2. FLSA Claims are arbitrable ................................................ 18

     3. Any ambiguities must be resolved by the arbitrator ...................... 21

VI.   CONCLUSION ...................................................................... 22

iii

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Askins v. Doe No. 1*,
727 F.3d 248, 252 (2d Cir. 2013)..........................................................................9,13

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333, 339 (2011) ..........................................................................21

*Baby v. Nissan Enterprises, Inc. et al*,
Case no 17-cv-03209 (Judge Amon - June 26, 2017................................................14

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,,
450 U.S. 728, 740 (1981) ..........................................................................19, 20

*Brooklyn Savings Bank v. O'Neil*,
324 U.S. 697 (1945) ..........................................................................19, 20

*Camesi v. Univ. of Pittsburgh Med. Ctr.*,
729 F.3d 239, 245 (3d Cir. 2013)..........................................................................10, 15

*Commissioner v. Soliman*,
506 U.S. 168, 113 S. Ct. 701, 121 L. Ed. 2d 634 (1993)..........................................15

*Carson v. Team Brown Consulting, Inc.*,
Case No. 16-cv-4206 (LDH) (RLM), 2017 WL 4357393(E.D.N.Y. Sept. 29, 2017)19

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199, 201 (2d Cir. 2015)..................................................11,12, 13, 14, 19, 20

*Ciago v. Ameriquest Mortgage Co.*,
295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) ..........................................................10, 18, 21, 22

iv

## TABLE OF AUTHORITIES
### (CONTINUED)

*Cotton v. Slone*
4 F.3d 176 (2d Cir. 1993) .......................................................................... 16

*D.A. Schulte, Inc. v. Gangi*,
328 U.S. 108 (1946) .......................................................................... 19, 20

*Fed. Ins. Co. v. Am. Home Assurance Co.*
639 F.3d 557 (2d Cir. 2011) ...................................................................... 18

*Genesco, Inc. v. T. Kakiuchi & Co. Ltd.*,
815 F.2d 840 (2d Cir. 1987) ...................................................................... 18

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ................................................................................... 16

*Hines v. Overstock.com, Inc.*,
380 F. App'x 22, 24 (2d Cir. 2010) ........................................................... 17

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) ....................... 18

*Jimenez v. LGL2 Bronx Portfolio LLC*,
No. 15-CV-9331 (S.D.N.Y. Oct.7, 2016) ................................................. 14

*Katz v. Cellco P'ship*
794 F.3d 341 (2d Cir.2015) ...................................................................... 16

*Martinez v. Gulluoglu LLC*,
No. 15 CIV. 2727 (PAE), 2016 WL 206474, at 3 (S.D.N.Y. Jan. 15, 2016) ........... 13

*Morse v. Levine*
19-CV-06711, 2019 WL 7494619, at *8 (S.D.N.Y. Dec. 19, 2019 ................. 10, 22

## TABLE OF AUTHORITIES
### (CONTINUED)

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp,*
460 U.S. 1, 22 (1983) ................................................................................. 16

*Shetiwy v. Midland Credit Mgmt.,*
959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013) ....................................... 10, 17

*Sierra Rutile Ltd. v. Katz,*
937 F.2d 743, 748 (2d Cir. 1991) ............................................................. 16

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP,*
201 F. Supp. 2d 291 (S.D.N.Y 2002) ...................................................... 18

*Shearson/Am. Exp., Inc. v. McMahon,*
482 U.S. 220 (1987) ................................................................................. 21

*Wal-Mart Stores, Inc. v. Visa USA, Inc.*
396 F.3d 124 (2d Cir. 2001) .......................................................... 9, 11, 14

## TABLE OF AUTHORITIES
### (CONTINUED)

**Statutes**

Fair Labor Standards Act ..............................................................*passim*
Federal Arbitration Act ..................................................................*passim*
Fair Labor Standards Act ..............................................................*passim*
New York Labor Law ............................................................................ 5
28 U.S.C. § 1291 .............................................................................. 5, 15
9 U.S.C. § 16(b)(1)- (2) ....................................................................... 16
9 U.S.C. § 16(b)(1)- (2) ....................................................................... 16

**Other Authorities**

Federal Rule of Civil Procedure ("FRCP") 41 .......................................................... 14

## I. INTRODUCTION

This appeal arises from Plaintiff-Appellant Sekouba Samake ("Appellant" or "Samake") notice, and subsequent withdrawal, of a voluntary dismissal without prejudice in Samake's district court action against Defendant-Appellee Thunder Lube, Inc., Abko Associates, Inc., and Dror Hershowitz (collectively "Appellee" or "Thunder Lube"), and the district court's entry of judgment compelling arbitration.

## II. ISSUES PRESENTED FOR REVIEW

**ISSUE 1:**     Whether a party can appeal a case it voluntarily dismissed without prejudice when said dismissal was withdrawn?

**ISSUE 2:**     Whether a party has waived arguments that were available below but not made to the district court?

**ISSUE 3**:     Whether the parties agreed to arbitrate their claims, and whether those claims are arbitrable?

### III.     STATEMENT OF CASE

#### A.     Factual Background

#### 1.     Thunder Lube

Thunder Lube is an oil change facility that was incorporated in July, 2015, to acquire the business operations of Abko Associates, Inc.. Thunder Lube, since its

2

incorporation, has operated a full-service oil and lube shop on Coney Island Avenue in Brooklyn, New York. Prior to July 2015, this business was operated by Abko Associates, Inc.. Abko has not operated any business nor had any employees since approximately July 2015. A42-43 ¶¶ 3-4. Dror Herzhowitz is a minority owner and operations manager of Thunder Lube, which position he also held at Abko Associates, Inc. A42 ¶¶ 1-2.

## 2. Samake entered into an Alternative Dispute Resolution Agreement with Thunder Lube.

On January 24, 2018, Samake and Thunder Lube entered into an Alternative Dispute Resolution Agreement (the "ADR Agreement"). A17-20. Samake was given the ADR Agreement to take home, review, and consult with counsel. A43 ¶ 9. The ADR Agreement was executed by both Samake and Thunder Lube on January 24, 2018. A20.

## 3. Samake agreed to resolve all claims by arbitration.

The ADR Agreement contains a section titled "**Alternative Dispute Resolution Process**" printed in bold letters. A17. Specifically, section 2 states:

> 2. **Alternative Dispute Resolution Process.** You agree to resolve, by arbitration, any and all claims or controversies ("Claims"), whether past, present or future, and whether statutory, state, or federal, that You may have against any of the following: (a) the Company, (b) the Company's officers, directors, shareholders, administrators, employees, or agents

3

in their capacity as such or otherwise, (c) the Company's parent, subsidiary and affiliated entities, (d) all successors and assigns of any of them" A17.

In addition, section 2 goes on to say that the arbitration will be conducted by the American Arbitration Association ("AAA"). A18. Finally, the ADR Agreement makes clear that law to be applied by the AAA will be "**the same substantive law** (and the law of remedies, if applicable) that would apply if the claim were brought in a court of competent jurisdiction." A18 ¶ 3 (emphasis added). Finally, the last paragraph of the ADR Agreement states, in capital letters:

> BY EXECUTING THIS AGREEMENT, YOU AGREE AND ACKNOWLEDGE THAT YOU HAVE READ THIS AGREEMENT, UNDERSTAND ITS TERMS, HAVE BEEN GIVEN AN OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL CONCERNING ITS TERMS, AND AGREE TO BE BOUND BY THE TERMS OF THIS AGREEMENT. YOU FURTHER ACKNOWLEDGED THAT BY SIGNING THIS AGREEMENT, YOU UNDERSTAND THAT **YOU ARE GIVING UP YOUR RIGHTS TO PURSUE REMEDIES IN A COURT OF LAW**. FINALLY, YOU ACKNOWLEDGE RECEIPT OF A COPY OF THIS AGREEMENT.

A20 (emphasis added). The ADR Agreement, and Samake's execution of the same, makes clear that Samake agreed to arbitrate his claims.

### 4. Samake's claims are subject to the ADR Agreement.

Each of Samake's causes of action arise directly, and exclusively, from his employment at Thunder Lube. On this issue, there is no dispute, as Samake alleged the same in his Complaint. To wit: "At all relevant times herein, Plaintiff was

4

employed by Defendants as an as an oil technician and lube operator" A7 ¶18 (errors in original). Stemming from his employment, Samake asserts three (3) causes of action against Thunder Lube. Specifically, Samake alleges violations of the Fair Labor Standards Act ("FLSA), and two allegations of violations of the New York Labor Law ("NYLL"). In addition, Samake seeks a declaratory ruling that Thunder Lube is in violation of the FLSA, Article 6 of the NYLL, and the New York Minimum Wage act and the Regulations thereunder. A12-13 ¶58.

Because each and every claim, allegation, cause of action, and prayer for relief arise directly, and exclusively, from Samake's employment with Thunder Lube, each claim, etc. is governed by the ADR Agreement.

## B. Procedural Background

### 1. The Complaint and Motion for Pre-Motion Conference

Samake, despite agreeing to the arbitrate his claims, commenced the underlying action in the United States District Court for the Eastern District of New York by filing his complaint on February 24, 2019. A5-13. On March 27, 2019, Thunder Lube filed a letter motion for a pre-motion conference in accordance with the Individual Motion and Practice Rules of the Honorable Eric N. Vitaliano. A14-16. In said pre-motion request, Thunder Lube claimed the executed ADR Agreement requires the underlying claims be arbitrated, and requested a pre-motion conference regarding a motion to compel arbitration. A14.

In its April 3, 2019 response to Thunder Lube's letter motion, Samake does not deny the existence of the ADR Agreement, but instead claims that any motion to compel arbitration "would fail for several reasons." A21. Samake's implicit acknowledgment of the existence of the ADR Agreement was noted by the district court. In denying Thunder Lube's motion for a pre-motion conference as unnecessary, the district court noted, on April 4, 2019, "that plaintiff's response makes no substantive argument that the arbitration clause is not valid and enforceable." A2.

On April 16, 2019, the district court set a briefing schedule for Thunder Lube's motion to compel arbitration. A2. Thunder Lube was ordered to serve its opening motion by May 16, 2019, with Samake's opposition due by June 17, 2019, and Thunder Lube's reply by July 2, 2019. A2.

### 2. Samake voluntary dismissed the action, and then withdrew said dismissal.

Thunder Lube timely served its opening papers on May 16, 2019. A2. Instead of filing opposition on June 17, 2019, Samake chose to file a Notice of Voluntary Dismissal without prejudice. A23. Also on June 17, 2019, Samake transmitted a letter to the district court in which he stated "…after careful consideration, Plaintiff has decided to discontinue this action without prejudice." A25. Samake thereafter expressed his intention to refile the underlying claims in various New York State

6

agencies, which are "not constrained by the type of purported arbitration agreement Defendants rely on in this case." A25.

On June 18, 2019, the district court informed the parties that it was reserving its decision on whether to so-order Samake's voluntary dismissal until such time as Samake expressly stated whether or not the parties had reached a settlement. A2. In doing so, the district reminded Samake of the "potentially preclusive effect of dismissal without prejudice" through settlement. A2. With this information in mind, and on June 24, 2019, Samake withdrew its voluntary dismissal. A26-27. Specifically, Samake stated that "….dismissal of this action will preclude Plaintiff from pursuing his FLSA claims in arbitration or in court if the purported arbitration agreement is valid". A27.

On June 25, 2019, the district court accepted Samake's withdrawal of his Notice of Voluntary Dismissal, and ordered the parties to inform the court as to whether they are seeking an extension of the briefing schedule. A2. Samake transmitted a letter to the district court on July 2, 2019, stating that parties had agreed upon, and were requesting, August 5, 2019 as the date by which Samake's opposition was to be served, and August 20, 2019 as the date by which Thunder Lube's reply was to be served. A28. The district court accepted, and so-ordered, the briefing schedule on July 3, 2019. A2.

7

### 3. The District Court granted Thunder Lube's motion to compel arbitration.

Pursuant to the new briefing schedule, Samake served its opposition to Thunder Lube's motion compel arbitration on August 5, 2019, with Thunder Lube timely serving its reply brief on August 20, 2019, A2. Once the motion was fully briefed and served, Thunder Lube's opening papers, Samake's opposition, and Thunder Lube's reply were filed via the Case Management/Electronic Case Files ("ECF") system on August 20, 2019. A29-73.

The district court granted Thunder Lube's motion to compel arbitration via a Memorandum and Order, so-ordered on December 6, 2020. The district court found that an agreement to arbitrate existed, despite an ambiguity contained in the ADR Agreement. The district court stated: "whatever ambiguity exists—and indeed, there is some ambiguity—in the lone sentence upon which plaintiff relies, it does not render the parties' express intent to enter into an arbitration agreement ambiguous." A79. The district court also found no basis for Samake's claim that the ADR Agreement was unconscionable. To wit: the district court stated: "[f]atally, Samake provides no allegations which point to any proof of procedural or substantive unconscionability here." A81.

Next, the district court dispenses with Samake's dissatisfaction with the contents of the ADR Agreement, stating: "the validity and meaning of specific

provisions within the Agreement to arbitrate is a matter for the arbitrator to decide." A80 (internal citations omitted). The district court added that "….procedural questions are presumptively for the arbitrator, not a judge, to decide. Inquiries into proper notice are plainly procedural questions" A81-82. Finally, in denying Samake's application for voluntary dismissal, the court found that: "Even setting aside the fact that Samake subsequently withdrew its motion, [the Federal Arbitration Act, "FAA"] FAA leaves no room for discretion. If a court finds an agreement to arbitrate, FAA directs that the court then shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." A82 (internal citations omitted).

Samake filed a Notice of Interlocutory Appeal January 17 2021, A 85, and filed his plaintiff-appellant opening brief on February 1, 2021 (the "Appellants Brief").

## IV.   SUMMARY OF ARGUMENT

Samake's cannot avoid the "well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013) (citation omitted); *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 396 F.3d 124 (2d Cir. 2001) at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments

9

available but not pressed below, . . . waiver will bar raising the issue on appeal."
(citation omitted). For that reason alone, Samake's appeal should be dismissed.
Additionally, Samake's notice of voluntary dismissal without prejudice was an
impermissible attempt to convert an interlocutory order into a final appealable order
through a voluntary dismissal, and undermines the policy against piecemeal
litigation embodied by 28 U.S.C. § 1291. *See Camesi v. Univ. of Pittsburgh Med.
Ctr.*, 729 F.3d 239, 245 (3d Cir. 2013).

But, if the Court were to entertain the appeal on its merits, the Court need
only engage in a two-part dispositive inquiry; (i) whether the parties agreed to
arbitrate their claims; and (ii) whether the claims at issue are arbitrable. *See Shetiwy
v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013). None of
Samake's arguments provide a basis for overturning the district court's order that
arbitration be compelled. First, any ambiguities raised by Samake are for the
arbitrator to resolve. *See Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324,
330 (S.D.N.Y. 2003). Moreover, any ambiguity would be resolved by the arbitrator
without regard to the ADR Agreement. To wit; "[a]bsent language stating that the
Agreement's other material terms supersede the ... specific AAA arbitration
provisions . . . the parties should be bound by AAA rules." *Morse v. Levine*, 19-CV-
06711, 2019 WL 7494619, at *8 (S.D.N.Y. Dec. 19, 2019).

Samake has not advanced any valid argument for overturning the district court's decision that the arbitration agreement was valid and enforceable. As such, Samake's appeal should be dismissed and the district court's orders affirmed.

## V. ARGUMENT

### A. SAMAKE'S DISMISSAL WAS WITHDRAWN, AND IN ANY EVENT, WAS AN ATTEMPT TO UNDERMINE INTERLOCUTORY APPEAL PROCEDURES

#### 1. Samake's Notice of Voluntary Dismissal was withdrawn, and any related issues waived because they were never raised with the district court.

The district court's June 18, 2019 order, A2, instructed Samake to inform the district court as to whether the parties had settled the action, and whether they intended to file for settlement approval. The district court explained that it was reserving its decision on whether or not to so-order the voluntary dismissal as a safeguard against the parties evading judicial review of a settlement agreement by entering into a stipulation of dismissal without prejudice. In reserving its decision, the district court cited *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 201 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 824 (2016), in which this Court held that stipulated dismissals settling FLSA claims required approval of the district court or the Department of Labor.

11

Nothing in the June 18, 2018 order prohibited Samake from informing the court that there had been no settlement, but that Samake awaits the reserved decision on whether to so-order his notice of dismissal. However, by letter dated June 24, 2019, and in response to the district court order that Samake regarding whether the case had settled, stated: "in light of the Court's order and concern under *Cheeks*, this case **must continue** in this Court." A27 (emphasis added).

Furthermore, Samake's June 24, 2019 letter suggested "this Court's June 23, 2019 order highlights an issue which may require further briefing,", A27, but Samake never requests further briefing. Instead, he on July 2, 2021, Samake transmits to the district court an extended proposed briefing schedule. Finally, and contrary to his assertion that the notice of dismissal was always in effect, Samake's opposition to Thunder Lube's motion to compel arbitration contains a heading that claims the district court should give effect to his voluntary dismissal "if the court concludes that plaintiff's claims are arbitrable." A62.

Despite the above, Samake now argues that he "did not and could not withdraw or vacate the notice of dismissal." Appellant Br. at 14-18. Specifically, Samake states that the only reason there was activity in the district court case after his June 17, 2019 notice of dismissal was because "the district court issued its June 18, 2019 order". Appellant Br. at 15. However, as discussed herein, the district court's order was only that Samake inform the court as to whether a settlement had

been reached. That is, Samake did not raise the issue of the effect of his voluntary dismissal at the district court level.

As Samake never raised these issues at the district court level, despite ample opportunity, these new arguments are waived. "[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal." *Askins v. Doe No. 1*, 727 F.3d 248, 252 (2d Cir. 2013) (citation omitted); *Wal-Mart Stores, Inc.*, 396 F.3d at 124 n.29 ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal." (citation omitted)). For that reason alone, Samake's appeal should be dismissed. However, even if not waived, Samake's new arguments rely on either: (i) the execution by Thunder Lube of a stipulation of dismissal; or (ii) an attempt to short-circuit established interlocutory appeals. Both arguments are discussed below.

## 2. Even if not waived, Samake's Notice of Voluntary Dismissal argument incorrectly presupposes Thunder Lube's participation in the dismissal.

Even if Samake's arguments were not new, and therefore not waived, Samake's reliance on caselaw involving stipulations of dismissal fail for want of Thunder Lube's participation. Samake first attempts to distinguish the case at bar from *Cheeks* by noting that this voluntary dismissal was without prejudice, instead

of with prejudice. Samake then relies on *Martinez v. Gulluoglu LLC*, No. 15 CIV. 2727 (PAE), 2016 WL 206474, at 3 (S.D.N.Y. Jan. 15, 2016) for the proposition that "[t]he parties may stipulate to a dismissal of this case without prejudice, as such settlements do not require court approval See *Cheeks*, 796 F.3d at 201 n.2"). Appellant Br. at 14-18.

In addition, Samake cites and relies on *Jimenez v. LGL2 Bronx Portfolio LLC*, No. 15-CV-9331 (S.D.N.Y. Oct.7, 2016), which held that the parties may "Stipulate to dismissal of the case without prejudice, which the Court need not approve, see *Cheeks*, 796 F.3d at 201 n.2."). Appellant Br. at 13. Finally, Samake cites *Baby v. Nissan Enterprises, Inc. et al*, Case No. 17-cv-03209 (Judge Amon – June 26, 2017), ECF Nos. 8, 7, in which dismissal without prejudice and without court approval occurred after the district court was notified of an FLSA settlement. Appellant Br. at 13.

In Samake's own words, "there was no settlement in this case", Appellant Br. at 12, and therefore any reliance on *Martinez, Jimenez, or Nissan Enterprises* is ill-placed. Samake, aware that there was no settlement in this case, and as such neither *Martinez, Jimenez, or Nissan Enterprises* apply, then pivots to the position that dismissal as of right pursuant to FRCP Rule 41(a)(1)(A)(i) "applies with even greater force." Appellant Br. at 13. Yet, as previously discussed, Samake withdrew said voluntary dismissal.

14

As such, the district court's December 22, 2020 order compelling arbitration should be affirmed. However, even if it had not been withdrawn, the voluntary notice of dismissal amount to an attempt at short-circuiting established interlocutory appeals, as discussed below.

**3. Samake's notice of dismissal was an attempt to undermine the established procedures for appealing interlocutory orders.**

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 245 (3d Cir. 2013), the Third Circuit determined that that allowing an appellant to convert an interlocutory order into a final appealable order through a voluntary dismissal undermines the policy against piecemeal litigation embodied by 28 U.S.C. § 1291. Such an attempt, the Third Circuit stated, operates to "short-circuit the procedure for appealing an interlocutory district court order that is separate from, and unrelated to, the merits of their case." *Id.* At 245-246.

Samake, despite a briefing schedule set by district court, waited until Thunder Lube had filed its motion to compel arbitration to then file its voluntarily dismissal. Samake did so in the hopes that the order compelling arbitration would then transform into a final appealable order, because under *Camesi,* as well as well-settled FAA rules, an interlocutory appeal may be taken as of right from an order *denying* a motion to compel arbitration, but not from an interlocutory order

*compelling* arbitration. *See* 9 U.S.C. § 16(b)(1)- (2) ("[A]n appeal may not be taken from an interlocutory order … granting a stay of any action under section 3 … [or] directing arbitration to proceed under section 4."); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) ("§ 16 generally permits immediate appeal of orders hostile to arbitration, whether the orders are final or interlocutory, but bars appeal of interlocutory orders favorable to arbitration."); *Cotton v. Slone,* 4 F.3d 176, 180 (2d Cir. 1993) (observing that the FAA "explicitly permits immediate appeals from orders giving litigation precedence over arbitration but forbids immediate appeals from orders favoring arbitration." (bracket and citation omitted)); *Sierra Rutile Ltd. v. Katz*, 937 F.2d 743, 748 (2d Cir. 1991) (same); *Katz v. Cellco P'ship*, 794 F.3d 341, 346 (2d Cir.2015) (observing that the FAA "permits immediate appeal of orders hostile to arbitration … but bars appeal of interlocutory orders favorable to arbitration."). This Court's holdings are consistent with the FAA's policy favoring arbitration agreements and its goal to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983).

Pursuant to the foregoing, the district court's December 22, 2020 order compelling arbitration should be affirmed.

## B. THE PROPER, AND EXCLUSIVE INQUIRY, IS WHETHER THE PARTIES AGREED TO ARBITRATE CLAIMS AND WHETHER THE UNDERLYING CLAIMS ARE ARBITRABLE.

### 1. The parties agreed to arbitrate.

The district court correctly held that the "When considering the question of arbitrability under FAA, district courts must consider: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement. (quoting *Shetiwy v. Midland Credit Mgmt.*, 959 F. Supp. 2d 469, 473 (S.D.N.Y. 2013).

In *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010), the Court determined that "a party seeking to invoke FAA § 4 must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue." In moving to compel arbitration, Thunder Lube submitted the signed ADR Agreement as evidence establishing a prima facie case that it entered into a valid arbitration agreement with Samake. The burden then shifted to Samake to put the making of the ADR in issue.

The district court noted one ambiguity, but held that Samake failed to provide evidence sufficient to place the making of the ADR Agreement in issue, ultimately holding that the parties intended to arbitrate claims. Specifically, the district court held that "whatever ambiguity exists—and indeed, there is some ambiguity—in the

17

lone sentence upon which plaintiff relies, it does not render the parties' express intent to enter into an arbitration agreement ambiguous. *See Fed. Ins. Co. v. Am. Home Assurance Co.*, 639 F.3d 557, 568 (2d Cir. 2011). A79. Such a finding is reviewable only for "clear error." *See Genesco, Inc. v. T. Kakiuchi & Co. Ltd.* 815 F.2d 840, 845 (2d Cir. 1987) (whether the parties have agreed to arbitrate is a factual question).

Here, the record supports the district court's factual findings: Samake signed the ADR Agreement after having sufficient time to review it and consult with counsel. As such, the district court's findings that the parties intended to arbitrate should be affirmed.

## 2. FLSA claims are arbitrable.

Samake contends that various provisions of the ADR Agreement are either inconsistent with the FAA or with the FLSA, Appellant Br. at 22-29, or with the AAA, A54-58, and as such, are not arbitrable. Samake's argument is contrary to a well-settled and long-standing principal articulated by the district court that "the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide." *Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 330 (S.D.N.Y. 2003) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)); *see also Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F. Supp. 2d 291, 292–93 (S.D.N.Y. 2002)

18

(holding that the enforceability of a fee splitting clause in the arbitration agreement was a matter for the arbitrator to decide). A80-81.

Samake relies on *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945); *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 (1946); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); and *Cheeks,* Appellant Br. at 23, to argue that FLSA rights cannot be waived or impaired. Samake goes on to state that "[i]ronically, after the notice of dismissal was filed, the lower court itself issued an order under *Cheeks*, which in effect said any agreement or action that had a "potential preclusive effect" as to FLSA rights is invalid." Appellant Br. at 23. As a preliminary issue, the June 18, 2019 order to which Samake refers cites *Cheeks* "(conducting *Cheeks* review where parties filed stipulation of dismissal without prejudice in apparent effort to evade judicial review) and *Carson v. Team Brown Consulting, Inc.*, No. 16-CV-4206 (LDH) (RLM), 2017 WL 4357393, at *3 (E.D.N.Y. Sept. 29, 2017) (discussing "potential preclusive effect of a dismissal without prejudice" in light of overbroad release provisions and the applicable statute of limitations). A3.

The order of the district court was only that that Samake "file a letter…..stating whether the parties have reached a settlement, and, if so, whether they intend to file a motion for settlement approval." A3. The district court's order amounts to a protection of Samake's FLSA rights in the event the parties were

19

attempting to evade judicial review. As Samake has admitted, no settlement agreement had been reached, and as such, no *Cheeks* review was necessary. Samake attempts to paint the June 18, 2019 order as ironic, and as suggesting that voluntary dismissal without prejudice in the absences of a settlement agreement invokes the same "potential preclusive effect" as the voluntary dismissal with a settlement agreement. As discussed, neither is true.

Moreover, Samake's reliance on *Brooklyn Savings, Schulte, and Barrentine* is misplaced. *Brooklyn Savings* explains that FLSA prohibits waiver of the right to liquidated damages and that interest may not be recovered on minimum wages and liquidated damages. In *Brooklyn Savings* at 710-16 (1945). As the ADR Agreement did not require Samake to waive any remedies or damages, *Brooklyn Savings* is not on point. In *Gangi*, the Court held that liquidated damages for a FLSA claim cannot be bargained away by bona fide settlements over dispute coverage. *Gangi* at 114 (1946). As there was no settlement in the case at bar, *Gangi* is not on point. Finally, *Barrentine* asked whether a union member can bring FLSA claims in federal court after unsuccessfully submitting a wage claim based on the same underlying facts to a grievance committee pursuant to a collective-bargaining agreement. As Thunder Lube does not currently have an established grievance committee, *Barrentine* is not on point.

20

Based on the foregoing, the district court's finding the underlying claims are arbitrable should be affirmed.

### 3. Any ambiguities must be resolved by the arbitrator.

The purported ambiguities raised by Samake do not render the ADR Agreement unenforceable, as Samake claims. Appellant Br. 29. As discussed in *Ciago,* above, "the validity and meaning of specific provisions within the Agreement to arbitrate is a matter for the arbitrator to decide." Any argument by Samake that the ADR Agreement, or any portion thereof, would be inconsistent with the FAA is refuted by the ADR Agreement itself. To wit: Section 2 of the ADR Agreement states that the FAA will govern the "the interpretation, enforcement, and all proceedings in this Section," A17-18. Under the FAA, a strong presumption in favor of arbitration exists. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226-27 (1987) (arbitration agreements under the FAA are presumed valid and enforceable). This presumption of validity reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

Furthermore, Section 2 states "[t]he parties agree that any disputes between them will be arbitrated by the American Arbitration Association ("AAA"). A18. As stated by the district court, "[a]bsent language stating that the Agreement's other material terms supersede the ... specific AAA arbitration provisions . . . the parties should be

21

bound by AAA rules." *Morse v. Levine*, 19-CV-06711, 2019 WL 7494619, at *8 (S.D.N.Y. Dec. 19, 2019) (adopting report and recommendation). A80. The district court then found that "there is no language in the ADR Agreement stating that its own provisions supersede AAA rules." A80. As such, any purported ambiguity in the ADR Agreement is, pursuant to *Ciago*, a matter for the arbitrator to resolve, which resolution could not, pursuant *to Morse*, divest Samake of any FLSA rights.

## VI.    CONCLUSION

For the foregoing reasons, Thunder Lube respectfully requests that the Court dismiss Samake's appeal and affirm the district court order compelling arbitration.

New York, New York
May 3, 2021

Respectfully Submitted,

/s/      Michael Bruk

Michael Bruk, Esq.

Law Office of Michael Bruk
138 W. 25th St. 10th Floor
Suite C1001
New York, NY 10001
Phone.          (212) 203-9303
Facsimile.      (347) 710-1791
Email.          mb@bruklaw.com
*Attorney for Defendants-Appellees*

## **CERTIFICATE PURSUANT TO FED. R. APP. P. 32**

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 4,640 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In preparing this certificate, I relied on the word count feature in Microsoft Word.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32 because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

LAW OFFICE OF MICHAEL BRUK

By*: s/ Michael Bruk*

Law Office of Michael Bruk
138 West 25th St., 10th Floor
Suite C1001
New York, New York, 10001
(212) 203-9303
*Attorney for Defendants-Appellees*

23

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system on May 3, 2021.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

LAW OFFICE OF MICHAEL BRUK

By: _s/ Michael Bruk_____

Law Office of Michael Bruk
138 West 25th St., 10th Floor
Suite C1001
New York, New York, 10001
(212) 203-9303

*Attorney for Defendants- Appellees*